## WARD v. LIVINGSTON.

No. 21302.   Opinion Filed Oct. 18, 1932.

S. A. Wilkinson, for plaintiff in error.

Biggers, Criswell & Aldridge, for defendant in error.

KORNEGAY, J. This suit originated in Seminole county. The present plaintiff in error sued the defendant in error and the father of the defendant in error for injuries occasioned by an automobile, driven by defendant in error and belonging to the father of the defendant in error. The injury occurred on a much traveled highway just out of Seminole and just below the bridge crossing Wewoka creek. As to the condition of the road at that time the evidence is not as clear as it might be, but it does not appear to have been a regular paved highway where the accident occurred, as one of the witnesses refers to it as being cindered.

Just below where the accident occurred, there appears to have been a crossing, probably a section line, and about where the accident occurred there was a dance hall, fruit stand, and filling station, part being on one side of the road and part on the other. The plaintiff in error was crossing from one of these places to the other, and just below the bridge, and having observed cars coming from both directions, he escaped the one that was south bound, but in his effort to escape the one that was north bound he did not succeed.

There was evidence that both automobiles, apparently, were in the middle of the road at one time, and there was further evidence that the car that hit him, driven by the defendant in error, apparently was in the middle instead of the side of the road at one time, and coming at a rapid rate of speed and no check of speed, though plaintiff in error claims that he had signaled it to slow down. If the evidence of some of the witnesses is to be believed, it was a case of wanton neglect on the part of the automobile driver, and a failure to regard the safety of persons that were likely to be at the place. The place was well lighted, and the car operated by the defendant in error appears to have been lighted.

The brief complains rather bitterly of the attitude of the trial judge in sustaining the demurrer to the evidence, and some question is made of contributory negligence and the necessity of pleading it, which was not done. The evidence that was adduced appeared to be consistent with itself, and to make out a case of negligence on the part of the driver of the automobile, and was negative on the proposition of contributory negligence of the plaintiff in error when finding himself in a place of danger as a result of the cars coming as they did.

The trial judge, on more than one occasion, examined the witnesses, interrupting the cross-examination at its beginning, and warned the defendant's counsel that his method was improper, and it appears that it was highly so. The attorney for the defendant subjected the plaintiff in error to a very rigid cross-examination upon all the details concerning the accident, and undertook to lay a predicate for proving later his assertions as to the circumstances, and the doctor who attended on the plaintiff in error testified as to the very serious character of his injuries. A bystander, who was a waitress on the west side of the road and who was an eyewitness to the accident, in describing it testified as follows:

"A. Me and a little girl friend was standing and talking to one another and we saw this fellow come up the road there and I looked and I saw him come up the road and I saw him run across the road and I saw the car come and hit him and he tried to get out of the way of it and it hit him and it knocked him a way up in the air. Q. Did you note any effort on the part of the driver of this car coming north to stop his car? A. No, I don't believe he did; I believe he speeded up a little bit; he was getting faster seemed like when he hit this fellow. Q. Did he make any—did he change the course of his car before the striking of the man? I mean did he swerve the car to one side to keep from striking him? A. No, sir; I don't think so; he kinda hit that fellow and knocked him away up in the air. Q. He appeared to drive closer to the man than away from him? A. Yes, sir; he sure did."

On further questioning, there is a slight variation in detail. A witness by the name of Gordon, who was running a fruit stand near by, described the accident, which happened near his place of business, being about 25 feet away. He was a taxicab driver and estimated the speed of the car between 35 and 40 miles per hour, and claimed that if the brakes had been applied from the time he first noticed the parties, the car could have been stopped, and the court concluded his examination, as follows:

"By the Court: Q. Now, Mr. Witness, if the automobile had stopped and the man stood there, of course, the accident wouldn't have occurred, would it? A. Probably not. He was going this way and the car this way—if the car was going straight on—Q. Well, if they had both stopped, he wouldn't have hit him, would he? A. No, sir. Q. If the automobile had stopped and if the man had stopped, there would not have been a collision? A. Why certainly not; no, sir."

A witness by the name of Sam Lewis testified as to a declaration of the defendant in error as to having seen the party before he was struck, as follows:

"Q. I wish you would just state what he said? A. Well, he said he saw him a right smart little piece ahead and he said he reckoned he thought it might be a hi-jacker, —I don't know."

It is clear from the testimony in this case that circumstances were shown to indicate a failure of duty on the part of the motorist in this case, such that a jury should have been allowed to pass upon it. The general law as to his duty to look out appears to be stated in section 45, vol. 5-6, Huddy Encyclopedia of Automobile Law (9th Ed.) as follows:

"Sec. 45. Lookout ahead. Generally. A

motorist is bound to realize that pedestrians will use the streets and highways, and he is bound to anticipate that they will lawfully occupy portions of the street in his course. He must, therefore, keep a reasonably careful lookout for the presence of such other travelers in order that injury to them may be avoided."

Such is the rule laid down by Berry on The Law of Automobiles (6th Ed.) sections 336 and 339.

Under the evidence in this case, the jury could well have found that the motorist was guilty of negligence, and could also have found that the injured party was not guilty of negligence that caused his injuries. In any event, it was peculiarly in the province of the jury to pass upon these causes, and as a demurrer to the evidence admits the truth of that which is favorable to the opposing party, and the natural inferences that could be drawn therefrom, this cause should be reversed and remanded with directions to grant a new trial. It is accordingly reversed at the costs of the defendant in error.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, and McNEILL, JJ., concur. CLARK, V. C. J., not participating. RILEY and ANDREWS, JJ., absent.